_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

**UNITED STATES OF AMERICA,**

Plaintiff-Appellee,

v.

**MARK ISAAC SNARR;**
**EDGAR BALTAZAR GARCIA,**

Defendants-Appellants.

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION, No 1:09-CR-15(02)

_____

**GOVERNMENT'S RESPONSE TO EDGAR GARCIA'S
MOTION TO RECALL THE MANDATE AND FOR LEAVE TO FILE
OUT-OF-TIME PETITION FOR REHEARING OR OUT-OF-TIME
RECONSIDERATION IN LIGHT OF *AYESTAS V. DAVIS***

_____

More than five years after it issued, Edgar Baltazar Garcia seeks recall of the

mandate in his direct appeal based on *Ayestas v. Davis*, 138 S.Ct. 1080 (2018), a

new Supreme Court case that invalidated this Court's standard for consideration of

an expert funding request in a proceeding under 28 U.S.C. § 2254.  The United

States opposes relief, first, because the invalidated standard was not used in this

case and the part of the standard that most troubled the Supreme Court does not

apply to direct appeals.  Second, even if the new standard applies, the issue is not

of sufficient importance to recall the mandate, given the Supreme Court's observations regarding the small difference between the invalidated standard and the standard articulated in *Ayestas*.

## I. Proceedings Below and *Ayestas*

### A. Offense Conduct and Proceedings

In 2007, Garcia and his codefendant, Mark Isaac Snarr, both inmates at the United States Penitentiary in Beaumont, Texas, brutally murdered another inmate named Gabriel Rhone after stabbing two correctional officers to obtain the keys to Rhone's cell. *United States v. Snarr*, 704 F.3d 368, 377 (5th Cir. 2013).

On January 21, 2009, a federal grand jury returned a one-count indictment against Snarr and Garcia, charging them with murdering Rhone in violation of 18 U.S.C. §§ 1111 and 2. *Id.* Shortly thereafter, the government filed notices of intent to seek the death penalty against both defendants. *Id.*

The trial began on April 6, 2010, and concluded on May 21 when the jury selected the death penalty for both defendants. They appealed — filing a consolidated brief — and this Court affirmed with an opinion entered on January 8, 2013. *Id.* at 368-406. Garcia and Snarr filed a petition for rehearing en banc, which was denied on March 15, 2013. The mandate issued on March 25, 2013.

Garcia filed a petition for a writ of certiorari, which the Supreme Court denied on February 24, 2014. One year later, on February 24, 2015, Garcia filed a

motion to vacate under 28 U.S.C. § 2255. The case was assigned number 1:13-CV-723 in the Eastern District of Texas. The district court has ordered the government to respond. After a stay and several continuances, the response is due on August 28, 2018.

**B.     The Funding Issue**

**1.  Before Trial[1]**

Garcia's trial team submitted a pre-discovery proposed budget that requested attorney's fees of $525,000 and funds for the following experts, investigative services, and expenses:

| | |
|---|---:|
| Blood splatter expert/ crime scene expert | $10,000 |
| Criminologist | $10,000 |
| DNA expert | $7,500 |
| Cultural expert | $19,000 |
| Expenses | $5,000 |
| Investigators | $25,000 |
| Mental health experts (psychiatrist, psychologist, organic brain disorder specialist) | $45,000 |
| Mitigation expert | $25,000 |
| Pathologist | $10,000 |
| Prison experts | $25,000 |
| Travel Costs | $15,000 |
| Total | $196,500 |

The district court conducted a budget conference with Garcia's attorneys and on April 27, 2009, approved a budget that reduced the attorney's fees to $420,000.

---

[1] The facts in this section are drawn from the government's brief in the direct appeal and the Court's opinion, *Snarr*, 704 F.3d at 402-03.

The court also reduced the requested funds for a cultural expert by $4,000 and the requested funds for a pathologist by $5,000. In all, the district court approved a total of $187,500 for experts, investigators, and expenses.

After the Chief Judge of this Court[2] reviewed the budget, she and the district court entered an order on September 11, 2009, reducing the funding for expert and investigative services to the following amounts:

| | |
|---|---|
| Investigators and mitigation experts | $30,000 |
| Mental health expert, pathologist, psychologist | $35,000 |
| Total | $65,000 |

Although removed from the budget, travel and other expenses were to be billed as incurred.

Garcia moved for reconsideration, and on October 30, 2009, the district court held a hearing on the motion. Garcia presented testimony from Dr. Jolie Brams, a psychologist who ultimately testified for him as a mitigation expert during the selection phase. Brams stated that she needed the assistance of a prison expert to help her understand Garcia's adjustment to life in prison and a cultural expert to help her explain Garcia's atypical Hispanic experience because he was from a "Mexican mafia" family. Although the doctor found Garcia to be of normal intelligence, she thought Garcia should be examined by a neuropsychologist to

---

[2] At the time, the Chief Judge was the Honorable Edith H. Jones.

help understand his "ability to conform his behavior in a voluntary nature." The court also heard testimony from Dr. Richard Cervantes, the proposed cultural expert; Dr. Craig W. Haney, the proposed prison expert; and Richard Burr, a contractor with the Federal Death Penalty Resource Council, who explained why he believed Garcia's proposed budget was reasonable.

After the hearing, the district court submitted a memorandum to the Chief Judge, requesting approval for the following additional funding:

| | |
|---|---|
| Mental health neurological expert | $15,000 |
| Criminologist/prison culture expert and prison Administration expert | $35,000 |
| Cultural mitigation expert | $15,000 |
| Total | $65,000 |

On December 17, 2009, the Chief Judge entered an order increasing the amount authorized by $20,000, explaining that she had carefully reviewed Garcia's motion for reconsideration and budget information, as well as memoranda and rulings of the district court. The Chief Judge denied funding for a Mexican cultural expert, finding it inappropriate. The December 17 order resulted in a total of $85,000 in authorized funding for Garcia's experts and investigative services.

Jury selection began on April 6, 2010. On April 19, Garcia filed a motion to dismiss the notice of death penalty on the grounds of inadequate funding. He attached an affidavit from Burr, who had examined the budgets for nine other capital cases tried in this Circuit. Those budgets included funds for experts and

5

investigators ranging from $75,000 to "over $200,000," with an average of $112,000.

The district court denied Garcia's motion on April 27.  Three days later, she amended the order to point out that, although Garcia could not use Criminal Justice Act funds for an expert on Mexican culture, he was not precluded "from presenting mitigating information regarding the effects and experiences of race, national origin, and/or culture . . . through other experts, friends, or family members."  The court further noted that Garcia had reported a "good childhood, with no history of abuse, neglect or other significant issues," in his most recent presentence report.

## 2.  Direct Appeal

On appeal, Garcia raised one issue related to funding: that he was "denied due process when this court's chief judge issued an order, pursuant to the Criminal Justice Act … , partially reducing and partially denying funds to Garcia for the retention of certain experts and investigators."  *Snarr*, 704 F.3d at 402; Appellants' Br. 215-32.  The Court reviewed the due process issue for abuse of discretion, the standard urged by Garcia.[3]  *Id.* at 405; Appellants' Br. 215-32.  In applying the standard, the Court noted that

---

[3]  In its brief, the government noted the lack of clarity regarding reviewability of the Chief Judge's decision to reduce funding under the CJA or to deny funding under 18 U.S.C. § 3599(g).  Appellee's Br. 167-69.  Ultimately, however, the government agreed with Garcia that, if the funding decisions were reviewable at all, the correct standard was abuse of discretion.  Appellee's Br. 169.

[n]on-psychiatric experts "should be provided only if the evidence is 'both critical to the conviction and subject to varying expert opinion.'" …. To demonstrate reversible error on the basis that he lacked inadequate funds for expert witnesses, a defendant must "establish a reasonable probability that the requested experts would have been of assistance to the defense and that denial of such expert assistance resulted in a fundamentally unfair trial."

*Id.* at 405 (citing *Yohey v. Collins*, 985 F.2d 222, 227 (5th Cir. 1993)).

The Court determined that Garcia had not been "denied … the right to present cultural, prison, and neurological experts," as he alleged, pointing out that "Garcia did in fact present evidence of his cultural background through family members, as well as an expert psychologist." *Id.* The Court concluded that

… Defendants have failed to establish a reasonable probability that the requested experts would have been of assistance and that their absence resulted in a fundamentally unfair trial. While Defendants focus on the experts Garcia did not retain, they neglect that Dr. Brams provided extensive evidence about the impact on Garcia of his upbringing, his culture, and his life in prison. Thus, the fact that Garcia did not have additional experts did not render his trial fundamentally unfair, given that Dr. Brams was able to present much, if not all, of the evidence Garcia believed to be vital for mitigation purposes. … Moreover, as discussed throughout this opinion, the government's case against Defendants was especially strong. Indeed, of the eighty-six mitigating factors submitted by Garcia, only eleven were found to exist by one or more jurors. Defendants have not advanced a credible argument that additional experts would have changed the jury's calculus.

Simply put, what *Ake* and its progeny guarantee to defendants is "an adequate opportunity [for them] to present their claims fairly within the adversary system." … Here, Defendants were afforded the funding necessary to do so. That the district court did not provide "expert assistance upon demand," … does not constitute an abuse of the court's discretion.

*Id.* at 405-06 (internal citations omitted) (quoting *Ake v. Oklahoma*, 470 U.S. 68, 77 (1985), and *Yohey*, 985 F.2d at 227).

Before filing his Section 2255 motion, Garcia hired the experts he did not have at trial.  The effect, if any, of their information is being litigated in the Section 2255 proceeding.

### 3.  Motion to Recall Mandate based on *Ayestas*

On March 21, 2018, the Supreme Court decided *Ayestas v. Davis*, 138 S.Ct. 1080 (2018), in which a state capital murder defendant challenged this Court's standard for a federal district court's decision regarding expert funding requests in a proceeding under 28 U.S.C. § 2254.  This Court and the district court had used the following standard to evaluate a request for expert funding under 18 U.S.C. § 3599(f) [4] by the state habeas petitioner:

> [T]he District Court pointed to Fifth Circuit case law holding that a § 3599(f) funding applicant cannot show that investigative services are "'reasonably necessary'" unless the applicant can show that he has a "'substantial need'" for those services. … In addition, the court noted that "[t]he Fifth Circuit upholds the denial of funding" when, among other things, "a petitioner has ... failed to supplement his funding request with a viable constitutional claim that is not procedurally barred." …
>
> On appeal, the Fifth Circuit … rejected that claim for essentially the same reasons as the District Court, citing both the "substantial need"

---

[4]  "Upon a finding that investigative, expert, or other services are *reasonably necessary* for the representation of the defendant, whether in connection with issues relating to guilt or the sentence, the court may authorize the defendant's attorneys to obtain such services on behalf of the defendant …."  18 U.S.C. § 3599(f) (emphasis added).

test and the rule that funding may be denied when a funding applicant fails to present "a viable constitutional claim that is not procedurally barred."

*Ayestas*, 138 S.Ct. at 1088 (internal citations omitted) (quoting *Ayestas v. Stephens*, No. H-09-2999, 2014 WL 6606498, *5-6 (S.D. Tex. Nov. 18, 2014), and *Ayestas v. Stephens*, 817 F.3d 888, 895-96 (2016)).

The Supreme Court disagreed with the standard. The Court's analysis turned on Section 3599(f)'s use of the term "reasonably necessary": "What the statutory phrase calls for, we conclude, is a determination by the district court, in the exercise of its discretion, as to whether a reasonable attorney would regard the services as sufficiently important, guided by the considerations we set out more fully below." *Id.* at 1093. After emphasizing the district court's broad discretion in funding decisions under Section 3599(f), the Court identified the considerations:

> A natural consideration informing the exercise of that discretion is the likelihood that the contemplated services will help the applicant win relief. After all, the proposed services must be "reasonably necessary" for the applicant's representation, and it would not be reasonable—in fact, it would be quite unreasonable—to think that services are necessary to the applicant's representation if, realistically speaking, they stand little hope of helping him win relief. Proper application of the "reasonably necessary" standard thus requires courts to consider the potential merit of the claims that the applicant wants to pursue, the likelihood that the services will generate useful and admissible evidence, and the prospect that the applicant will be able to clear any procedural hurdles standing in the way.
>
> To be clear, a funding applicant must not be expected to prove that he will be able to win relief if given the services he seeks. But the "reasonably necessary" test requires an assessment of the likely utility

of the services requested, and § 3599(f) cannot be read to guarantee that an applicant will have enough money to turn over every stone.

*Id.* at 1094.

The Court noted that, "although the difference between the two formulations may not be great," *id.* at 1092, the "substantial need" test was "arguably more demanding," *id.* at 1093, than Section 3599(f)'s "reasonably necessary" standard. The Court further pointed out that "[t]he difference between 'reasonably necessary' and 'substantially need[ed]' may be small, but the Fifth Circuit exacerbated the problem by invoking precedent to the effect that a habeas petitioner seeking funding must present 'a viable constitutional claim that is not procedurally barred.'" *Id.*

Garcia now urges the Court to recall the mandate from his direct appeal based on *Ayestas*. The government opposes relief.

## II. Response to Motion to Recall Mandate

This case does not warrant recall of the mandate. First, the Chief Judge and district court did not appear to apply the invalidated standard to the funding decisions, nor did this Court apply it to the sole funding issue raised by Garcia. Moreover, the part of the standard that most troubled the Supreme Court does not apply to direct appeals. Second, even if the new standard applies, the issue is not of sufficient importance to recall the mandate, given the Supreme Court's observations regarding the small difference between the invalidated standard and

10

the standard articulated in *Ayestas*.

A court of appeals has the inherent authority to recall its own mandate. *See, e.g., Goodwin v. Johnson*, 224 F.3d 450, 459 (5th Cir. 2000) (citing *Calderon v. Thompson*, 523 U.S. 538, 549 (1998)); *United States v. Tolliver*, 116 F.3d 120, 123 (5th Cir. 1997). The power, however, must be used "sparing[ly]" and only under "extraordinary circumstances" because of "the profound interests in repose[.]" *Calderon*, 523 U.S. at 550 (quotation marks omitted); *see also Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244-45 (1944) (acknowledging the "deep-rooted policy in favor of the repose of judgments"). Recalling a mandate should be a remedy "of last resort, to be held in reserve against grave, unforeseen contingencies." *Calderon*, 523 U.S. at 550. This Court's Local Rules put it plainly: "a mandate will not be recalled except to prevent injustice." 5th Cir. R. 41.2; *see Nelson v. James*, 722 F.2d 207, 208 (5th Cir. 1984) (the rule "codifies the prevailing jurisprudence").

Finality is "essential to the operation of our criminal justice system." *Teague v. Lane*, 489 U.S. 288, 309 (1989) (plurality opinion). Once a conviction has become final, Congress and the Supreme Court impose an array of limitations on post-judgment review, and a court's decision whether to recall the mandate in a criminal case must be "measure[d] . . . against the statutory and jurisprudential limits applicable in habeas corpus cases." *Calderon*, 523 U.S. at 553. Allowing a

recall of the mandate to do service for a collateral attack on a final judgment circumvents the stringent limitations on the retroactive application of new rules of criminal procedure under *Teague*, as well as other habeas doctrines.

**A.** **Garcia only raised a due process challenge to the funding for experts on direct appeals, and it appears that the Chief Judge used the "reasonably necessary" standard, not the "substantial need" test.**

Although Garcia now appears to claim that he directly challenged the Chief Judge's funding decisions on appeal, Motion at 9-10, that is not the issue he raised. The appellants' brief set out the following issue in two places:

> Garcia's and Snarr's death sentences must be reversed because this Honorable Court denied Garcia *due process* by overruling the district court and denying the funding necessary for Garcia to present a punishment case, which additionally impinged upon the *due process* rights of Snarr in the joint trial.

Appellants' Br. 3-4, 215 (emphasis added).

In the argument section of his brief, Garcia described the facts, and then argued the issue as a due process challenge. Appellants' Br. 224-32. And, while the Court addressed reviewability at the prompting of the government and in light of the then-recent *In re Marcum, L.L.P.*, 670 F.3d 636 (5th Cir. 2012), the Court decided the issue under the terms Garcia raised — as a due process challenge. *Snarr*, 704 F.3d at 404 ("Defendants here do not directly appeal the chief judge's order. Rather, their claim is that as a result of that order, they lacked the funds necessary to present an adequate defense, and therefore were denied due

process.").  Moreover, the Court used the abuse-of-discretion standard of review urged by Garcia for his due process issue.  *Snarr*, 704 F.3d at 404; Appellants' Br. 215.  Although Garcia now complains that the due process standard was "far more demanding," Motion at 10, he does not appear to argue that it was incorrect.

It also appears that neither the Chief Judge nor this Court used the "substantial need" test invalidated by *Ayestas*.  While neither of the funding orders set out the standard used, the September 11, 2009, order advised counsel that further requests must explain "how [the additional] expert's services have become relevant and necessary to the defense."  Partial Budget Order, *United States v. Garcia*, No. 1:09-CR-15(02) (E.D. Tex. Sep. 11, 2009), ECF Doc. No. 61 (sealed).  Likewise, the December 17, 2009, order reminded counsel that "[a]ll expenditures are subject to the tests of reasonableness and necessity as required by the CJA."  Second Partial Budget Order, *United States v. Garcia*, No. 1:09-CR-15(02) (E.D. Tex. Dec. 17, 2009), ECF Doc. No. 138 (sealed).  Thus, to the extent the orders reveal anything about the standard used by the Chief Judge, it appears that her decision was made in accordance with the "reasonably necessary" standard articulated in *Ayestas*, 138 S.Ct. at 1093-94.

Likewise, this Court did not apply the "substantial need" test as part of its review.  *Snarr*, 704 F.3d at 404 ("We review a district court's denial of funding for expert witnesses for abuse of discretion.").  And because this was a direct appeal,

13

the Court did not require Garcia to "present 'a viable constitutional claim that is not procedurally barred,'" a requirement that the Supreme Court deemed exacerbating in *Ayestas*. *Ayestas*, 138 S.Ct. at 1093. Instead, this Court focused on considerations that the Supreme Court identified as "natural" in *Ayestas*, such as "the likelihood that the contemplated services will help the applicant win relief" and "the likelihood that the services will generate useful and admissible evidence." *See id.* at 1094. After thoroughly evaluating the evidence presented by Garcia, the Court determined that his mitigation specialist presented "much, if not all, of the evidence Garcia believed to be vital for mitigation purposes." *Snarr*, 704 F.3d at 405. But in light of the strength of the evidence against Garcia, the Court concluded that he had "not advanced a credible argument that additional experts would have changed the jury's calculus." *Id.* at 406.

In sum, the facts of this case do not support a recall of the mandate based on *Ayestas*. As Garcia appears to acknowledge, the Court used the correct standard to address the sole issue he raised on appeal regarding funding — a due process challenge. Moreover, the funding orders do not refer to the "substantial need" standard invalidated by *Ayestas*. Rather, they appear to use the "reasonably necessary" standard. Likewise, this Court did not use the "substantial need" standard on direct appeal, and its review for abuse of discretion focused on considerations endorsed by the Supreme Court in *Ayestas*.

Garcia's reliance on *United States v. Emeary*, 794 F.3d 526 (5th Cir. 2015); *United States v. Fraga-Araigo*, 281 F.3d 1278 (5th Cir. 2001) (unpublished); *United States v. Rangel-Mendoza*, 244 F.3d 137 (5th Cir. 2001) (unpublished); *United States v. Hawkins*, 51 F. App'x 929 (5th Cir. 2002) (unpublished); and *United States v. Harris*, 54 F. App'x 793 (5th Cir. 2002) (unpublished), is misplaced. Unlike Garcia's case, changes in the law unquestionably affected the defendants' sentences in those cases. The cases also presented additional compelling facts not present here. In *Emeary*, Judge Dennis also determined that defense counsel and this Court failed to recognize controlling precedent at the time of the direct appeal. *Emeary*, 794 F.3d at 530. In *Fraga-Araigo*, the panel overlooked an en banc opinion decided while the appeal was pending. *Fraga-Araigo*, 281 F.3d at *2. In *Rangel-Mendoza*, the district court sentenced the defendant under binding precedent that was withdrawn, but could not be raised on appeal, and an en banc decision changed the law while the defendant's petition for writ of certiorari was pending. *Rangel-Mendoza*, 244 F.3d at *1. Finally, the mandates in *Hawkins* and *Harris*, were recalled based on an en banc opinion that issued approximately one month after the defendants' petitions for writ of certiorari were denied. *Hawkins*, 51 F. App'x at *1; *Harris*, 54 F. App'x at *1.

Likewise, *Robertson v. Davis*, No. 17-70013, 2018 WL 3309567, slip op. at *1 (5th Cir. July 5, 2018) (unpublished), and *Sorto v. Davis*, 716 F. App'x 366,

366 (5th Cir. 2018) (unpublished), do not support recall of the mandate for Garcia.

Both of those cases involved facts similar to *Ayestas* — appeals in Section 2254

proceedings in which funding was denied under the invalidated standard — and the

cases were being held for the Supreme Court's decision in *Ayestas*. *Robertson*,

2018 WL 3309567, slip op. at *1; *Sorto*, 716 F. App'x at 366. Thus, the decisions

in those cases were not final when *Ayestas* was decided.

**B.      Even if the *Ayestas* standard should have been but was not applied, the issue is not of sufficient importance to recall the mandate, given the Supreme Court's observations regarding the small difference between "substantial need" and "reasonably necessary."**

In *Ayestas*, the Supreme Court observed that "although the difference

between the two formulations may not be great," *Ayestas*, 138 S.Ct. at 1092, the

"substantial need" test used in this Circuit for cases on collateral review was

"arguably more demanding," *id.* at 1093, than that required by Section 3599(f)'s

"reasonably necessary" standard. The Court further noted that "[t]he difference

between 'reasonably necessary' and 'substantially need[ed]' may be small, but the

Fifth Circuit exacerbated the problem by invoking precedent to the effect that a

habeas petitioner seeking funding must present 'a viable constitutional claim that is

not procedurally barred.'" *Id.* But, as discussed above, the exacerbating language

was not used in this case because the language only applies to cases on collateral

review. Moreover, the Court adhered to the considerations set out in *Ayestas*.

Thus, even if the Court were to determine that the Chief Judge or the panel had

applied the "substantial need" standard — without mentioning it — the "small" difference between the two standards, *id.* at 1093, does not rise to the level of "extraordinary circumstances" sufficient to disregard "the profound interests in repose[.]" *Calderon*, 523 U.S. at 550. Simply put, the minor difference in the standards, particularly as applied in this case, do not justify recalling a mandate issued five years ago.

## Conclusion

Garcia incorrectly claims that "*Ayestas* represents a complete change in the law from that which determined the outcome of this case." Motion at 1. There is no indication that the district court or the Chief Judge of this Court used the standard invalidated by *Ayestas* in making the funding decision regarding experts. Likewise, this Court did not use the "substantial need" test in deciding Garcia's direct appeal. Rather, the Court correctly applied the abuse of discretion standard to Garcia's due process issue, the only challenge he made to the funding issue. Moreover, even if the Court had applied the "substantial need" test on direct appeal, it would have done so without the language the Supreme Court found exacerbating. And without the exacerbating language, the small difference between "substantial need" and "reasonably necessary" do not present extraordinary circumstances justifying recall of the mandate. Therefore, the government urges the Court to deny Garcia's motion to recall the mandate and his

related request to file an out-of-time petition for rehearing.

Respectfully submitted,

Joseph D. Brown
United States Attorney
Eastern District of Texas

/s/ Traci L. Kenner
Traci L. Kenner
Assistant United States Attorney
110 N. College, Suite 700
Tyler, Texas 75702
(903) 590-1400
(903) 590-1439 (fax)
Traci.Kenner@usdoj.gov
Texas Bar No. 11307070

**Certificate Related to 5th Cir. R. 25.2**

In compliance with 5th Cir. R. 25.2, I certify the following: (1) all required privacy redactions have been made on this document; (2) this electronically-submitted document is an exact copy of the paper document; and (3) this document has been scanned for viruses with the most recent version of commercially-available virus scanning software used by the United States Attorney's Office for the Eastern District of Texas and is free of viruses.

/s/ Traci L. Kenner
Traci L. Kenner
Assistant United States Attorney

**Certificate of Service**

I certify that on July 23, 2018, this document was filed by the Court's ECF system, which served a true and correct copy on Christine Lehmann, Richard J. Bourke, and Jason D. Hawkins, counsel for Edgar Baltazar Garcia.

/s/ Traci L. Kenner
Traci L. Kenner
Assistant United States Attorney

**Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1. This document complies with Fed. R. App. P. 27(d)(2) and the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 4,083 words, excluding any parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This document complies with the typeface requirements of Fed. R. App. P. 27(d)(1)(E) and Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 27(d)(1)(E) and Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Version 14.0.6129.5000 in 14-point Times New Roman font.

/s/ Traci L. Kenner
Traci L. Kenner
Assistant United States Attorney
Dated: July 23, 2018
